**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1915
_____

NONSO ONYEKWULUJE,
                                        Appellant

v.

UR MENDOZA JADDOU, Director of the United States Citizenship and Immigration
Services; MERRICK B. GARLAND, United States Attorney General
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-23-cv-00412)
District Judge:  Honorable Gene E.K. Pratter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 7, 2024

Before:  JORDAN, PHIPPS, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed February 21, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Nonso Onyekwuluje appeals pro se from an order that rejected his request that the United States District Court for the Eastern District of Pennsylvania compel the United States Citizenship and Immigration Services (USCIS) to declare him a United States citizen. We will affirm.

Onyekwuluje's complaint alleged that he entered the United States in 1981 with a student visa and became a lawful permanent resident two years later. (ECF 2, at 2.) He further claimed that his "citizenship application" was "approved" by an officer of the Immigration and Naturalization Service (INS) in June 1989.[1] (Id.) Although Onyekwuluje asserted that the agency had his correct address, as evidenced by his receipt of a "renewed green card" in 1991, he did not receive a notice to appear in federal court for an oath ceremony, which the immigration officer had told him to expect. (Id.) In 1993, the INS notified Onyekwuluje that it recommended that the federal court deny his petition for naturalization for lack of prosecution. (Id.) Onyekwuluje asserted that he did not receive that notice because it was sent to old address. (Id.) Later, Onyekwuluje learned through a Freedom of Information Act request that "no order was entered by any Federal Court to deny [his] application for citizenship for lack of prosecution." (Id. at 3.)

---

[1] The Government explains that this allegation "likely refers to the INS's approval of an Application to File Petition for Naturalization (Form N-400)." Gov't's Br., 6 n.2. That application "was a necessary precursor to filing a petition" for naturalization, which would have been adjudicated by a court. Id.

In 2023, Onyekwuluje filed a pro se complaint in the District Court, seeking to compel USCIS to "complete his citizenship process and officially declare him a citizen of the United States and provide him with a certificate of naturalization."[2]  (ECF 2, at 4.) The District Court sua sponte dismissed the complaint for lack of subject matter jurisdiction, holding "that '[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.'  8 U.S.C. § 1421."  (ECF 4, at 9.) The District Court also explained that, even if it had jurisdiction, Onyekwuluje was not entitled to relief because he was convicted in 1993 of federal drug offenses, which rendered him ineligible for naturalization.[3]  (Id. at 11-12.)  Onyekwuluje timely appealed. (ECF 6.)

We have jurisdiction under 28 U.S.C. § 1291, and may affirm on any basis supported by the record.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

---

[2] Onyekwuluje filed a miscellaneous action seeking essentially the same relief in 2017. He failed to pursue that action, however, and the District Court terminated it in 2022, instructing Onyekwuluje to file a civil action.  Onyekwuluje v. Sessions, E.D. Pa. No. 2:17-mc-00135 (order entered Nov. 3, 2022).

[3] Onyekwuluje was convicted of importing heroin, conspiracy to import heroin, and aiding and abetting.  See 21 U.S.C. §§ 963, 952(a), 960(a)(1), and 18 U.S.C. § 2.  He was sentenced to 145 months of imprisonment.  We affirmed.  See United States v. Onyekwuluje, 60 F.3d 818 (3d Cir. 1995) (table).

To be eligible for naturalization an individual must show, among other things, that he is "a person of good moral character." 8 U.S.C. § 1427(a)(3); 8 C.F.R. §§ 316.2(a)(7), 316.10.[4] An individual cannot be found to be of good moral character if he has been convicted of an aggravated felony or has been confined in a penal institution for 180 days or more as the result of a conviction. See 8 U.S.C. §§ 1101(f)(7) & (f)(8). Onyekwuluje contends that the good moral character requirement applies only to the five-year period preceding the filing of the citizenship application. Therefore, Onyekwuluje asserts, because he submitted his application in 1989, his 1993 drug convictions and resulting incarceration do not act as a bar to a finding of good moral character. Appellant's Br., 4. Onyekwuluje is mistaken. An applicant for citizenship must be of good moral character "for the five years immediately preceding the date of the filing of the application for naturalization until the time [he] takes the oath of allegiance." United States v. Teng Jiao Zhou, 815 F.3d 639, 643 (9th Cir. 2016); see also 8 C.F.R. § 316.10(a)(1) (stating that the good moral character requirement "includes the period between the examination and the administration of the oath of allegiance"); Boatswain v. Gonzales, 414 F.3d 413, 416-17 (2d Cir. 2005). Onyekwuluje was convicted of an aggravated felony and served more

---

[4] We note that a "good moral character" requirement for naturalization existed at the time that Onyekwuluje submitted his application. See In re Haniatakis, 376 F.2d 728, 729 (3d Cir. 1967). In addition, 8 U.S.C. § 1101(f)(7) (1988) precluded a finding of good moral character where the alien had been confined, as a result of conviction, to a penal institution for an aggregate period of 180 days or more during the period for which he is required to establish good moral character.

than 180 days of imprisonment before taking the oath of allegiance.  See United States v. Labeille-Soto, 163 F.3d 93, 96 (2d Cir. 1998) (holding that a violation of 21 U.S.C. § 952(a) constitutes an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)). Therefore, he cannot demonstrate that he is "a person of good moral character" for the purpose of naturalization.  See 8 U.S.C. § 1101(f)(7) & (f)(8).

There is also no merit to Onyekwuluje's claim that his aggravated felony conviction should be "excused" because "[h]e has been [a person] of good moral character [for] well over 20 years now."  Appellant's Br., 4-5.  In support of this argument, Onyekwuluje cites 8 C.F.R. § 212.2(a), which provides that an alien convicted of an aggravated felony who previously has been ordered removed generally is not eligible to seek readmission for 20 years.  That provision, however, has no bearing on Onyekwuluje's eligibility for citizenship which, as explained above, is governed by a good moral character requirement that applies until he takes the oath of allegiance.

We also agree that Onyekwuluje did not state a plausible due process or equitable estoppel claim.  Because Onyekwuluje has not taken the oath, he does not have a cognizable interest in the grant of his naturalization application.  See Duran-Pichardo v. Att'y Gen., 695 F.3d 282, 285-86 (3d Cir. 2012).  In addition, a "delay in processing a naturalization application does not give rise to an estoppel claim."  Id. at 285 n.7 (citing Mudric v. Att'y Gen., 469 F.3d 94, 99 (3d Cir. 2006)).  Indeed, courts generally cannot grant naturalization based on equitable considerations or by estoppel.  See Koszelnik v.

5

Sec'y Dep't of Homeland Sec., 828 F.3d 175, 182 (3d Cir. 2016).  And "even if [we] did agree that barring [Onyekwuluje] from naturalization was a harsh penalty, we lack equity powers to override statutory requirements and grant [him] citizenship."  Id.

For the foregoing reasons, we will affirm the District Court's judgment.